IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HOWARD TAYLOR, Derivatively on Behalf of AVIAT NETWORKS, INC., <br><br> Plaintiff, <br><br> v. <br><br> CHARLES D. KISSNER, WILLIAM A. HASLER, CLIFFORD H. HIGGERSON, EDWARD F. THOMPSON, JAMES C. STOFFEL, ERIC C. EVANS, MOHSEN SOHI, HOWARD L. LANCE, HARALD J. BRAUN, GUY M. CAMPBELL, SARAH A. DUDASH, SCOTT T. MIKUEN, CARL A. THOMSEN, and JOHN C. BRANDT, <br><br> Defendants, <br><br> AVIAT NETWORKS, INC., a Delaware Corporation, <br><br> Nominal Defendant. | C.A. 11-635-RGA |

## MEMORANDUM OPINION

Blake A. Bennett, Esq., Wilmington, Delaware; Kim S. Kim, Esq. (argued), San Diego, California; Felipe J. Arroyo, Esq., San Diego, California; Attorneys for Plaintiff Howard Taylor.

Alisa E. Moen, Esq., Wilmington, Delaware; Dale Barnes, Esq. (argued), San Francisco, California; Erin A. Smart, Esq., San Francisco, California; Attorneys for Defendants Charles D. Kissner, William A. Hasler, Clifford H. Higgerson, Edward F. Thompson, James C. Stoffel, Eric C. Evans, Mohsen Sohi, Howard L. Lance, Harald J. Braun, Guy M. Campbell, Sarah A. Dudash, Scott T. Mikuen, Carl A. Thomsen, John C. Brandt, and Aviat Networks, Inc.

September 27, 2012
Wilmington, Delaware

1

*[signature]*

ANDREWS, United States District Judge:

Plaintiff Howard Taylor filed derivative shareholder claims for breaches of fiduciary duty, waste of corporate assets, and unjust enrichment against both current and former Directors and Officers of Aviat Networks, Inc. (D.I. 1). The Defendants are current Directors Charles D. Kissner, William A. Hasler, Clifford H. Higgerson, Edward F. Thompson, James C. Stoffel, Eric C. Evans, and Mohsen Sohi; former Directors Howard L. Lance and Harald J. Braun; former Officers Sarah A. Dudash, Scott T. Mikuen, Carl A. Thomsen, and John C. Brandt; and former Director and Officer Guy M. Campbell.[1] On October 3, 2011, Defendants filed a motion to dismiss based on Taylor's (1) failure to allege pre-suit demand or plead demand futility and (2) failure to state a claim. (D.I. 7). As this is a motion to dismiss, all allegations are viewed in the light most favorable to Taylor.

## FACTUAL BACKGROUND

Aviat Networks, Inc. is a public corporation traded on the NASDAQ stock exchange.[2] Aviat was known as Harris Stratex Networks, Inc. during all times relevant to this motion and will be referred to as Harris Stratex in this opinion. Harris Stratex was born out of a merger agreement between Stratex Networks, Inc. and Harris Corporation. (D.I. 1, ¶ 3). This agreement merged Stratex with a subsidiary of Harris known as Microwave Communications Division ("MCD"). (*Id.* at ¶ 2). The Stratex Board of Directors recommended shareholder approval of

---

[1] Defendants Kissner, Hasler, Higgerson, and Thompson ("Stratex Defendants") approved the merger as Directors of Stratex and then carried on as Directors of the combined company. (D.I. 1, ¶¶ 13-16). They are alleged to be liable for the decision to approve the merger as well as the subsequent failures of the combined company regarding misleading financial disclosures and the failure to fix the faulty accounting system. (*Id.*) Defendants Stoffel, Evans, Sohi, Lance, Braun, Campbell, Dudash, Mikuen, Thomsen, and Brandt are alleged to be liable only for their roles at the combined company, as they were neither Directors nor Officers of pre-merger Stratex, and are not alleged to be liable for the decision to approve the merger. (*Id.* at ¶¶ 17-26).

[2] http://www.nasdaq.com/symbol/avnw/

2

the merger on January 5, 2007, via the Registration Statement.³ (D.I. 1, ¶ 46; *see* D.I. 10, Exh. 1). The Stratex shareholders voted to approve the merger and relinquished a fifty-six percent controlling interest in the merged company in exchange for Harris' contribution of MCD and $25,000,000. (D.I. 1, ¶ 2).

The merger was destined to be a bad deal for the Stratex shareholders. (*Id.* at ¶ 3). MCD had a faulty accounting system that understated losses for 2005 and 2006 and artificially inflated its value. (*Id.*). These accounting errors persisted within the Harris Stratex combination, causing the company to issue inaccurate financial statements from January 2007 through May 2008. (*Id.* at ¶¶ 49-62). It was not until July 30, 2008, that Harris Stratex revealed to the public that "material weaknesses in its system of internal control over financial reporting" required the company to restate its financial disclosures dating back four fiscal years. (*Id.* at ¶ 62). Defendant Dudash, Harris Stratex's CFO, participated in an earnings conference call on the same day of the public announcement. (*Id.* at ¶ 63). During this call, Dudash stated that Harris Stratex had intended to "migrate away" from the MCD accounting system as early as the merger integration period, but that this migration never occurred. (*Id.*).

On August 14, 2008, the Harris Stratex Board of Directors received a status update on the company's Sarbanes-Oxley Act § 404 testing ("SOX 404"). (*Id.* at ¶ 67). This update uncovered specific internal accounting problems, including "material weakness related to account reconciliations resulting in restatement adjustments" in the Harris Stratex North Carolina location. (*Id.* at ¶ 67). The finalized SOX 404 report, presented to the Board on August 26, 2008, further divulged 236 accounting control deficiencies. (*Id.*). Fifty-three deficiencies remained unresolved. (*Id.*). On September 19, 2008, Harris Stratex filed a Form 8-K with the Securities Exchange Commission. (*Id.* at ¶ 69). The Form 8-K Restatement decreased

---

³ The Registration Statement is also known as the proxy statement/prospectus. (D.I. 10-1, at 2).

3

shareholder equity by $15.3 million as of March 28, 2008, $11.6 million as of June 29, 2007, $7.7 million as of June 30, 2006, and $4.9 million as of July 1, 2005. (*Id.*). Earnings were decreased by $3.7 million for the first three quarters of fiscal year 2008, and net losses increased by $3.9 million, $2.8 million, and $3.0 million for the fiscal years 2007, 2006, and 2005, respectively. (*Id.*). The Restatement detailed the accounting errors, including (i) work-in-progress inventory that was either untimely or incorrectly recorded to cost of sales; (ii) discrepancies in account reconciliation adjustments relating to inventory and intercompany accounts receivable; and (iii) errors in accounts receivable balances as a result of control deficiencies in the recording and elimination of intercompany transactions. (*Id.*).

Taylor alleges that these shareholder losses are due to Defendants' breaches of their fiduciary duties.

## LEGAL STANDARD

This Court has succinctly summarized the applicable legal principles:

> Federal Rule of Civil Procedure 23.1 requires a plaintiff to "allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors ... and the reasons for the plaintiff's failure to obtain the action or for not making the effort." Fed.R.Civ.P. 23.1. Rule 23.1 only goes to the adequacy of a plaintiff's pleadings; however, "the substantive requirements of demand are a matter of state law." *Blasband v. Rales,* 971 F.2d 1034, 1047 (3d Cir. 1992).
>
> Under Delaware law, "the entire question of demand futility is inextricably bound to issues of business judgment and the standards of that doctrine's applicability." *Aronson v. Lewis,* 473 A.2d 805, 812 (Del. 1984) (overruled on other grounds). In the case of "claims involving a contested transaction i.e., where it is alleged that the directors made a conscious business decision in breach of their fiduciary duties," courts must apply the *Aronson* test to determine whether demand was futile. *Wood v. Baum,* 953 A.2d 136, 140 (Del. 2008). Under this test, the trial court is confronted with two related but distinct questions: (1) whether threshold presumptions of director disinterest or independence are rebutted by well-pleaded facts; and, if not, (2) whether the complaint pleads particularized facts sufficient to create a reasonable doubt that the

4

challenged transaction was the product of a valid exercise of business judgment. *Levine v. Smith*, 591 A.2d 194, 205 (Del. 1991) (overruled on other grounds). These two inquiries are disjunctive, meaning that if either prong is met, demand is excused. *In re J.P. Morgan Chase & Co. S'holder Litig.*, 906 A.2d 808, 820 (Del. Ch. 2005).

Under the first prong, "directorial interest exists whenever divided loyalties are present, or where the director stands to receive a personal financial benefit from the transaction not equally shared by the shareholders." *Blasband*, 971 F.2d at 1048. A director lacks independence when a director's decision is based on extraneous influences, rather than the merits of the transaction. *Id.* In order for a court to find that demand is futile due to director interest or a lack of independence, a majority of the board of directors, or one-half of an evenly-numbered board, must be interested or lack independence. *Beam v. Stewart*, 845 A.2d 1040, 1046 n. 8 (Del. 2004).

If the first prong is not satisfied, there is a presumption that the Board's actions were the product of a valid exercise of business judgment. *Id.* at 1049. Thus, to satisfy the second prong, a plaintiff must plead sufficient particularized facts to "raise (1) a reason to doubt that the action was taken honestly and in good faith or (2) a reason to doubt that the board was adequately informed in making the decision." *In re J.P. Morgan Chase & Co.*, 906 A.2d at 824 (quoting *In re Walt Disney Co. Derivative Litig.*, 825 A.2d 275, 286 (Del.Ch. 2003)) (citations omitted).

However, "where the subject of a derivative suit is not a business decision of the Board but rather a violation of the Board's oversight duties," the trial court must apply the *Rales* test. *Wood*, 953 A.2d at 140. Under the *Rales* test, the court must consider whether the plaintiff has alleged "particularized facts establishing a reason to doubt that 'the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand.' " *Id.* (citing *Rales v. Blasband*, 634 A.2d 927, 934 (Del.1993)). A plaintiff might do this, for instance, by showing that the directors would face a "substantial likelihood" of personal liability by complying with a shareholder's demand to pursue litigation. *See Rales v. Blasband*, 634 A.2d 927, 936 (Del. 1993). However, "[w]here directors are contractually or otherwise exculpated from liability for certain conduct, 'then a serious threat of liability may only be found to exist if the plaintiff pleads a non-exculpated claim against the directors based on particularized facts.' " *Wood*, 953 A.2d at 141 (citing *Guttman v. Huang*, 823 A.2d 492, 501 (Del.Ch. 2003)). Furthermore, if "directors are exculpated from liability except for claims based on 'fraudulent,' 'illegal' or 'bad faith' conduct, a plaintiff must also plead particularized facts that demonstrate that the directors acted with scienter, i.e., that they had actual or constructive knowledge

5

that their conduct was legally improper." *Id.*; *see also Stone v. Ritter,* 911
A.2d 362, 370 (Del. 2006) (in discussing *In re Caremark Int'l,* 698 A.2d
959, 959 (Del.Ch. 1996), explaining that "imposition of liability requires a
showing that the directors knew that they were not discharging their
fiduciary obligations").

*In re Intel Corp. Derivative Litig.,* 621 F. Supp. 2d 165, 170-71 (D. Del. 2009). Finally, demand futility must be determined on a claim-by-claim basis. *MCG Capital Corp. v. Maginn,* 2010 WL 1782271, at *18 (Del. Ch. 2010). The fact that demand is futile as to one claim does not mean it is futile as to the others. *Id.*

## DISCUSSION

Taylor's allegations can generally be grouped into one of four legal theories. The first involves what the Stratex Directors knew and did before they recommended the MCD merger to shareholders. (D.I. 1, ¶ 84). Taylor alleges that during this time the Stratex Board ("Stratex Defendants") either learned that MCD was overvalued or failed to reasonably investigate MCD's finances. In either case, the Stratex Defendants nevertheless voted to recommend the merger. This allegedly violated their fiduciary duties to shareholders.

Taylor's second set of allegations involves what took place after the merger of Stratex and MCD was complete. Taylor alleges that Directors and Officers quickly learned of pervasive accounting problems inside Harris Stratex, yet they took no corrective action.[4] Taylor further alleges that Defendants then knowingly caused the combined company to file misleading financial disclosures based on the faulty accounting system. (*Id.* at ¶¶ 85-86). This too allegedly violated their fiduciary duties to shareholders.

---

[4] These Defendants include current Directors Kissner, Evans, Hasler, Higgerson, Sohi, Stoffel, and Thompson (known as "Director Defendants" in the Complaint). (*Id.* at ¶¶ 85-86). Of these Directors, Defendants Evans, Hasler, and Thompson are further alleged to have breached heightened oversight obligations corresponding to their membership on the Audit Committee. (*Id.* at ¶ 98). Defendants Lance and Braun are alleged to be liable as former Directors. (*Id.* at ¶¶ 20-21). Defendants Dudash and Mikuen are alleged to be liable for their roles as Officers. (*Id.* at ¶¶ 23-24). Defendant Campbell is alleged to be liable for both his role as former CEO of Harris Stratex and as a former Director. (*Id.* at ¶ 22).

6

Taylor also alleges a third theory that two Harris Stratex Officers breached their fiduciary duties by engaging in insider trading.[5]

Finally, Taylor alleges as a fourth theory that every Defendant is liable for waste and unjust enrichment. (*Id.* at ¶¶ 101-09).

Defendants argue that Taylor failed to allege demand futility and failed to state claims for relief for any of his theories.[6]

**(a) Merger**

The Court first examines Taylor's allegations that the Stratex Defendants (Kissner, Hasler, Higgerson, and Thompson) breached their fiduciary duties by recommending shareholder approval of the MCD merger. Taylor does not allege to have made demand on the Board; he therefore must establish demand futility. *In re Intel Corp. Derivative Litig.*, 621 F. Supp. 2d at 170. As the four Stratex Defendants constitute one-half of the Harris Stratex Board, properly alleged claims would render demand futile. Because Taylor challenges a particular transaction, the *Aronson* test applies. There are two ways to satisfy *Aronson*: (i) rebut the presumption of director disinterest or independence by well-pleaded facts; or (ii) plead particularized facts sufficient to create a reasonable doubt that the challenged transaction was the product of a valid exercise of business judgment.

---

[5] Defendants Thomsen and Brandt are alleged to have sold stock with knowledge of the accounting problems. (*Id.* at ¶¶ 25-26).

[6] Defendants requested judicial notice of a number of documents in support of their arguments for dismissal. (D.I. 9). These documents include Harris Stratex SEC filings, the transcript of the Dudash conference call, the Harris Stratex Certificate of Incorporation, Harris Stratex internal audit reports, and internal communications regarding the Restatement and the SOX 404 update. (D.I. 10, Exhs. 1-10). The documents were referred to in Taylor's complaint but were not attached in their entirety. (*See generally*, D.I. 1). Taylor offered no objection to Defendants' request. As the request for judicial notice is not opposed, the Court will allow the request and consider the materials as appropriate.

Taylor does not allege that any director was personally interested in the merger or lacked independence. (D.I. 1, ¶ 84; *see* D.I. 24, pp. 16-18). He therefore must allege particularized facts that create a reasonable doubt that the decision to recommend the merger was a valid exercise of business judgment. This requires particularized allegations that Stratex Defendants breached the duty of care. *Aronson*, 473 A.2d at 812. This is accomplished by alleging that the Stratex Defendants did not inform themselves of all material information reasonably available to them prior to entering the transaction. *Id.* The Complaint's allegations in this regard are that (as subsequent events showed) MCD was significantly overvalued at the time of the merger. Taylor also alleges that the Stratex Defendants "knew" or "failed to ascertain" this overvaluation. (D.I. 1, ¶ 84). The Stratex Defendants also "failed to take appropriate measures to discover MCD's true valuation." (*Id.*). In short, the particularized allegations are that the Stratex Defendants breached the duty of care because it was determined after the merger that MCD was overvalued at the time of the merger. It is true that the assumptions underlying the approval of the merger turned out to be false and the transaction turned out to be unfavorable for Stratex shareholders.[7] Seemingly, Taylor wishes the Court to find a breach of the duty of care based on the significant discrepancy between the merger's expected value and its actual lesser value to shareholders. This post-facto recognition, however, does not suggest that Stratex Defendants failed to reasonably educate themselves about the risk of merger. The Complaint does not allege any concrete steps that a reasonable director would have taken yet were not taken here prior to recommending approval of the merger.

---

[7] The Registration Statement cited that "information concerning the financial performance, condition and business operations of [MCD] was one of the reasons [the Board of Directors] recommended Stratex shareholders vote in favor of the transaction." (D.I. 1, ¶ 47). It also stated that "the favorable relative contribution that Stratex and [MCD] would each be making to the combined company" was considered. *Id.*

8

Taylor attempted to bolster his theory at oral argument. He argued that MCD was so rife with accounting errors, that even minimal investigation would have revealed that it was seriously overvalued. (D.I. 37, p. 30-31). Taylor's own Complaint belies the notion that the Stratex Defendants failed to investigate MCD's value. Taylor alleges that the Stratex Defendants took "the financial performance, condition and business operations of [MCD]" into account when recommending the merger to shareholders and "considered 'the favorable relative contribution that Stratex and [MCD] would each be making to the combined company.'" (D.I. 1, ¶ 47). These allegations show that the Stratex Defendants evaluated the finances of MCD and deliberated on the worthiness of the deal, i.e., they attempted to inform themselves while considering the merger. Taylor's theory is further undermined by the fact that the Stratex Defendants relied upon two expert reports before approving of the merger.[8] Delaware Corporate Code §141(e) specifically entitles directors to rely on the reports of experts acting within their expertise. *Brehm v. Eisner*, 746 A.2d 244, 261 (Del. 2000). Plaintiff's allegations do not give rise to a reasonable doubt that the transaction was a product of business judgment.

Taylor proffered another theory at oral argument to attempt to breathe life into this claim for recovery. He argued that a statement of former Harris Stratex CFO, Defendant Sarah Dudash,[9] demonstrates Stratex Defendants' failure to conduct a reasonable investigation of MCD's financial condition. (D.I. 37, p. 34-35). Dudash stated on a conference that she was aware of the need to "migrate away" from the accounting system as early as the "integration process." (D.I. 1, ¶ 63). According to Taylor, it can be implied from this statement that

---

[8] Directors relied upon an Ernst & Young Report of MCD Financial Statements prepared at the behest of MCD. This Report opined that MCD's financial statements fairly presented that company's financial condition. (D.I. 10, Exh. 1 at 226). Directors also relied on an opinion created at their own request by Bear Stearns, which opined that the exchange was financially fair to the stockholders of Stratex. (*Id.* at 384-87).

[9] Defendant Dudash is alleged to have been Harris Stratex's CFO from January 2007 through February 2009. (*Id.* at ¶ 23).

9

problems in the MCD accounting system were reasonably knowable to Stratex Defendants prior to the merger. Dudash, however, worked for MCD before the merger, not Stratex. (*Id.* at ¶ 23). Dudash is not alleged to have communicated any information regarding MCD's accounting weaknesses to Stratex Defendants. Further, there is no allegation, particularized or otherwise, that Dudash's knowledge was readily discoverable by Stratex Defendants or attributable to them. The conference call statement thus does not suggest that the Stratex Defendants failed to reasonably inform themselves of the merger's potential risks. Moreover, the statement itself only shows that the transition to a new accounting system after the merger was a goal of Dudash, but one that she did not accomplish. It does not suggest that Stratex's Board of Directors knew or suspected prior to the merger that MCD's accounting system was compromised.

Taylor offers no plausible factual theory explaining exactly how the Stratex Board could have learned about MCD's accounting control weaknesses. The theory that directors on one side of a deal should be held liable when they do not probe deeply into the internal accounting controls of the other side of a deal is not consistent with the protections of the business judgment rule. Taylor has not established that demand was futile and his claim for breach of fiduciary duty based on the merger recommendation is dismissed.

**(b) Accounting Issues**

Taylor's remaining allegations take place after consummation of the merger. They involve acts of the combined Harris Stratex Board of Directors and certain Harris Stratex Officers. Taylor argues that these Director and Officer Defendants breached their fiduciary duties by allowing Harris Stratex to maintain a faulty accounting system and to file misleading financial disclosures from February 2007 through May 2008. Taylor does not allege to have made a demand on the Board, instead arguing that demand was futile. Because Taylor is not

10

challenging a specific transaction, but alleging that Defendants failed to oversee the company's accounting system, the *Rales* test applies. *See Rales*, 634 A.2d at 936. Under *Rales*, the Court must consider whether Taylor alleged particularized facts establishing a reason to doubt that the Board could have properly exercised independent and disinterested business judgment in response to a demand. *Id.* at 934. Taylor may do this by showing that the Directors would face a "substantial likelihood" of personal liability by complying with his demand to pursue litigation. *Id.* at 936. Here, however, Taylor's pleading burden is heightened by the corporate charter's elimination of director liability "except to the extent that such exemption from liability or limitation thereof is not permitted under the [Delaware General Corporate Law]." (D.I. 10, Exh. 6 at Article IX). As a result of this language, Stratex Defendants cannot be held liable for a mere breach of the duty of care; Taylor must plead (1) a breach of the duty of loyalty or (2) acts or omissions not in good faith, or acts involving intentional misconduct or a knowing violation of the law. *See* 8 Del. Code § 102(b)(7) (omitting irrelevant categories); *In re IT Group Inc.*, 2005 WL 3050611, at *11 (D. Del. 2005). Thus, Taylor must allege that Director Defendants acted with scienter. *In re Intel Corp. Derivative Litig.*, 621 F. Supp. 2d at 170-71.

Taylor argues that reports certain Director Defendants received from the Internal Audit Department ("IAD") in February, March, and November of 2007 show that those Defendants knew of the accounting problems within Harris Stratex. (D.I. 1, ¶ 70). These reports detailed significant exceptions, inventory control weaknesses, and the need for corrective measures within the Stratex New Delhi and Thailand locations. (*Id.*) They were presented to Defendants Thompson, Evans, Hasler, Kissner, and Lance. (*Id.* at ¶ 71). Taylor argues that the reports put these Defendants on notice of accounting problems within their organization. Further, by making financial disclosures based on the compromised accounting system, they supposedly

knew the disclosures were misleading. It is true that those "who knowingly disseminate false information that results in corporate injury or damage to an individual stockholder violate their fiduciary duty." *Malone v. Brincat*, 722 A.2d 5, 9 (Del. 1998). Taylor's problem is that none of the New Delhi or Thailand accounting errors are alleged to have actually contributed to the disclosure inaccuracies. The Complaint itself chiefly pins the need for Restatement on accounting problems originating within the MCD side of the business at the San Antonio and North Carolina locations. (D.I. 1, ¶¶ 65-67). The IAD Reports, however, were limited to problems in New Delhi and Thailand. Moreover, those sites were a legacy of Stratex, not MCD. Subsequent Harris Stratex SOX 404 reports confirmed that the problems in New Delhi and Thailand did not contribute to the disclosure inaccuracies.[10] The IAD Reports do not show that these Director Defendants had knowledge of the relevant accounting problems and therefore do not expose them to a substantial likelihood of liability.

Taylor next alleges that Stratex's 2006 10-K shows that certain Director Defendants knew of long-standing internal accounting problems, yet they allowed those problems to persist and filed unreliable financial disclosures. (D.I. 1, ¶ 85). Defendants Kissner, Hasler, Higgerson, and Thompson were former Stratex Directors and remained on as Directors of the combined Board. (*Id.*) Stratex's 2006 10-K does warn investors of problems with the "internal controls over financial reporting," disclosing two material weaknesses. (D.I. 31, Exh. 1 at 50). The 10-K, however, also stated that one weakness was remedied by the time of the filing, while the second weakness was being actively addressed.[11] This 10-K does not raise the specter of

---

[10] The SOX 404 report identified control deficiencies by geographic area. (D.I. 31, Exh 6. at 11). Neither the New Delhi nor the Thailand locations are listed. (*Id.*)

[11] "Management believes that in fiscal 2006 we have remediated the weakness related to revenue recognition due to the expansion of internal review and clarification of internal policies which have been distributed to finance personnel worldwide. With respect to the weakness related to inadequate review of the financial statements of the

12

dishonesty or bad faith; to the contrary, it demonstrates an approach tilted toward full disclosure of possible accounting problems within the company. Further, the 10-K detailed pre-merger, Stratex problems. Taylor's reliance on Stratex issues is not well-taken, since they did not cause the injuries. The injuries arose from MCD problems. Nothing in the disclosure is specifically alleged to be connected with actual losses suffered by shareholders or the need for the Restatement. Taylor's allegations concerning the Stratex 2006 10-K do not indicate a substantial likelihood of liability on the part of these Director Defendants.

Taylor next relies on the SOX 404 updates to show the Board's abandonment of the duty to oversee the accounting system. The SOX 404 updates were released in August 2008 and revealed "material weakness related to account reconciliations resulting in restatement adjustments." (D.I. 1, ¶ 67). The updates attributed the control deficiencies to both "actions taken by inexperienced new staff within [the accounting] system" and the "lack of management review of key account reconciliations in a timely manner." (Id.). Two-hundred and thirty-six control deficiencies were identified, fifty-three of which remained "unremediated" at the time of the final update. (Id.). Defendant Dudash later blamed these weaknesses on a "lack of sufficient oversight and review as well as a lack of the appropriate number of resources to ensure adequate analysis of work in process inventory accumulated costs." (Id. at ¶ 68). According to Taylor, the Board consciously failed to take the corrective action that would have prevented Harris Stratex from misrepresenting financial data. Taylor admits that the SOX 404 updates revealing

---

foreign operations and the period-end financial closing and reporting process for the Company's consolidated operations, we have identified, developed and [begun] to implement a number of measures to strengthen our internal controls in this area...However, as a result of our assessment of our financial controls over financial reporting as of March 31, 2006, we have concluded that we have not remediated the material weakness in internal controls over the review of the financial statements of the foreign operations and the period-end financial closing and reporting process for the Company's consolidated operations...We will continue reviewing our internal controls over the financial close and reporting process, and will implement additional controls as needed." (Id.)

13

these errors were not received until after Harris Stratex had acknowledged accounting issues and began correcting the accounting problems. Nonetheless, Taylor argues that the after-the-fact nature of these updates does not diminish their value as indicators that the Director Defendants systematically failed to maintain oversight over accounting. Taylor especially singles out the members of the Audit Committee, as they were tasked with monitoring the performance of the internal audit function and the company's financial reporting process.[12]

Taylor correctly states that the SOX 404 updates unveiled the significant accounting control problems that were the basis of Harris Stratex's artificially inflated financial condition. One update does blame "management" for its failure to timely review account reconciliations. (*Id.* at ¶ 67). Taylor argues that these "management" shortcomings refer to the failures of the Director Defendants who retained ultimate control of the company. "Management," however, was used in a generic sense and nothing suggested that it refers to the Board of Directors. To the contrary, the context of the report suggests that "management" referred to the employee managers located within the specific departments where the errors occurred.[13] Taylor never alleges that it was any Board Member's specific responsibility to micromanage the tasks of individual accountants. (D.I. 1, ¶¶ 28-37). Taylor's allegations do not explain how the Board became aware of the particular accounting failures occurring in discrete locations of the international company. Moreover, six of the Defendants were "Outside Directors" during the relevant time period. (*Id.* at ¶¶ 14-19). Under Delaware Law, "there is no authority to support the attribution of knowledge to Outside Directors who are not alleged to be directly involved in

---

[12] The members of the Audit Committee were Director Defendants Evans, Hasler, and Thompson. (*Id.* at ¶ 98).

[13] The "management" phrase appears within a list of "Lessons learned" by the company. (D.I. 10, Exh. 10 at 414). Other lessons included "Turnover in Finance department" and "Actions taken by inexperienced new staff." (*Id.*).

14

the day-to-day operations of the company." *In re Forest Labs., Inc. Deriv. Litig.*, 450 F. Supp. 2d 379, 391 (S.D.N.Y. 2006). This applies to Directors on the audit committee.[14] For these reasons, the SOX 404 reports do not provide a substantial likelihood that Directors knowingly failed to correct the accounting problems. Taylor thus has not pled demand futility.

Taylor argues that Director Defendants, at the very least, knew that the internal controls of the company rendered the financial disclosures highly suspect, and that they misled shareholders by issuing disclosures based on shaky grounds. The Harris Stratex 2007 10-K and 2008 10-Qs, however, explicitly stated that the company's accounting controls were not yet vetted.[15] Thus, the risk of inaccuracy was explicitly disclosed and shareholders cannot argue they were misled. Taylor argues that even with this warning, it was nevertheless a breach of the duty of loyalty to issue the disclosures with such high risk of inaccuracy. This theory does not support an argument that the Directors would face a substantial likelihood of personal liability. The company could not decline to submit the disclosures for the unknown period of time it would take to vet the accounting system. Defendants' decision to continue releasing quarterly and yearly reports, with the caveat that the effectiveness of the internal controls remained undetermined, put shareholders on notice of the investment risk and allowed Harris Stratex to

---

[14] The assertion that membership on an Audit Committee is sufficient to imply scienter is contrary to Delaware law. *See Wood*, 953 A.2d at 142.

[15] "Historically, Harris has only been required to certify or report on or receive an attestation from its independent registered public accounting firm with respect to Harris, taken as a whole, and not MCD in particular. We are currently in the process of reviewing, documenting and testing our internal controls over financial reporting. We will continue reviewing our internal controls over the financial disclosure and reporting process, and will implement additional controls as needed. However, we cannot be certain that our controls over financial processes and reporting will be adequate in the future and we may incur significant additional expenses in complying with these provisions of the SOX Act. Any failure to maintain effective controls over financial reporting could cause us to prepare inaccurate financial statements." (D.I. 31, Exh. 2 at 27).

meet its federal disclosure obligations. It was a reasonable decision and consistent with good faith and the duty of loyalty.

Taylor next argues that certain Harris Stratex Officers knew of the internal accounting problems since as far back as the integration process. These allegations are aimed at Defendants Campbell, Dudash, and Mikuen.[16] (*Id.* at ¶ 96). They are based on a statement of Dudash, Harris Stratex's former CFO. (*Id.* at ¶ 63). On the same day the company announced the need for Restatement to the public, Dudash stated during a conference call, "[I]t was on our roadmap to migrate away from [the accounting] system during our integration process, and that migration did not occur and now it has become one of our priority items." (*Id*). Taylor argues that this statement shows that these Officers knew of the accounting problems since shortly after the merger. Further, because the accuracy of financial disclosures is dependent on the reliability of the accounting process, they also knew that financial disclosures were misleading.

Taylor overstates the significance of Dudash's statement. Even in the light most favorable to Taylor, the statement merely reflects the intention to transition to a new accounting system and implies that better systems were known to be available. This is not equivalent to subjective knowledge that the old accounting system was compromised and actively causing financial misstatements. The failure to transition to the new accounting system may imply negligence, but Taylor must meet the higher standard of bad faith. Further, nowhere does Taylor allege that this information was conveyed to the full Board. Even if these Officers knew that the accounting system was compromised, that is a long way from showing that the Board was also aware of the accounting breakdown to such an extent that they would face a substantial

---

[16] As CEO of Harris Stratex from January 2007 through April of 2008, Defendant Campbell was both an Officer and Director. (*Id.* at ¶ 22).

likelihood of personal liability if the Board were to decide to pursue litigation. Taylor has therefore not shown demand futility in relation to the accounting claims.

### (c) Insider Trading

Taylor alleges that Officer Defendants Thomsen and Brandt engaged in insider trading, thus breaching their fiduciary duties to stockholders. (*Id.* at ¶ 97). "Insider trading claims depend importantly on proof that the selling defendants acted with scienter." *Guttman v. Huang*, 823 A.2d 492, 505 (Del. Ch. 2003). As explained, Taylor fails to allege that either Defendant had actual knowledge of the accounting issues that existed at Harris Stratex. Taylor's allegations of insider trading are conclusory and do nothing to show that Thomsen and Brandt were in possession of material nonpublic information when they sold their stock. Taylor thus fails to allege a valid claim for insider trading.

Further, since this is still a derivative claim, Taylor is required to either make pre-suit demand or plead facts showing that demand on the Board of Directors would have been futile. *In re Citigroup Inc. S'holder Derivative Litig.*, 964 A.2d at 120. Under *Rales*, Taylor must allege particularized facts that raise a reasonable doubt that the Directors could exercise business judgment about whether to bring suit. *Id.* Taylor's allegations of insider trading are directed at Officers who were never members of the Board. (D.I. 1, ¶¶ 25-26). They thus do nothing to raise a reasonable doubt about the ability of the Directors themselves to exercise business judgment and cannot establish demand futility. *See In re Citigroup Inc. S'holder Derivative Litig.*, 964 A.2d at 120. Taylor's allegations of insider trading thus fail, both for lack of demand exhaustion and for failure to state a claim.

**(d) Waste and Unjust Enrichment**

Taylor also presents a claim of waste against every Defendant. Taylor does not allege to have made a demand on the Board. Demand may be excused under the second prong of *Aronson* if a plaintiff properly pleads a claim of waste. *Orloff v. Shulman*, 2005 WL 3272355, at *11 (Del. Ch. 2005). "The essence of a claim of waste of corporate assets is the diversion of corporate assets for improper or unnecessary purposes." *Michelson v. Duncan*, 407 A.2d 211, 217 (Del. 1979). A claim of waste requires the pleading of particularized facts demonstrating that "the consideration received by the corporation was so inadequate that no person of ordinary sound business judgment would deem it worth that which the corporation paid." *Orloff*, 2005 WL 3272355, at *11. Corporate waste is "confined to unconscionable cases where directors irrationally squander or give away corporate assets." *Brehm v. Eisner*, 746 A.2d 244, 263 (Del. 2000). Taylor's theory is that paying the salaries and standard fees of officers and directors who commit breaches of fiduciary duty constitutes waste. The claim is completely unprecedented under Delaware law. Unsurprisingly, Taylor cites no case law that offers any support for this theory. Because Taylor has failed to allege with particularity any unconscionable behavior committed by Defendants or that they caused Harris Stratex to squander assets that no person of sound business judgment would allow, the claims are not properly pleaded, and demand is not excused.

Taylor's final claim is one of unjust enrichment brought against every Defendant. He must allege facts demonstrating that each Defendant was enriched, that Harris Stratex was impoverished, that a relationship existed between those facts, that justification was absent, and that no remedy at law existed. *See Jackson Nat'l Life Ins. Co. v. Kennedy*, 741 A.2d 377, 393

(Del. Ch. 1999). Taylor has two unjust enrichment theories. The first is that the Defendants were paid for their services. As in the waste context, Taylor has not properly alleged any breach of fiduciary duty or any other theory providing a factual basis to conclude that the compensation received by each Defendant was paid without justification. Taylor's second theory is that Defendants Brandt and Thomsen engaged in insider trading and therefore received improper benefits at the expense of the corporation. As already discussed, this theory is not supported by necessary allegations to survive a motion to dismiss. Taylor's claim for unjust enrichment is as meritless as his claims of waste. They are not properly pleaded, and demand is not excused.

## CONCLUSION

Taylor has failed to establish demand futility as to any of his claims. Defendants' motion to dismiss is thus granted. As to all the claims other than the accounting breach of fiduciary duty claims, there is not a hint that the claims could be amended in any way that would make them viable. They therefore they will be dismissed with prejudice, as it would be futile to allow amendment. While there is doubt that the accounting claims can be successfully amended, it is not clear that allowing amendment would be futile. Plaintiff will be given three weeks leave to amend the accounting claims.

An appropriate order will follow.